UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

AJ W. KIM, on behalf of himself, FLSA Collective : 
Plaintiffs, and the Class, :
                                               :   Civil Action No.: 1:24-cv-02062
                      Plaintiffs, :
                                          :
                                          :  **COLLECTIVE AND CLASS**
             -against- :  <u>**ACTION COMPLAINT**</u>
                                          :
JAMO 31 INC. d/b/a OSAMIL, JAMO 31 PLUS : 
INC. d/b/a OSAMIL UPSTAIRS, MOKWOO KIM, :
WON CHUL SEO a/k/a LION SEO, and IRENE :  **JURY TRIAL DEMANDED**
LEE a/k/a SOOKYUNG LEE, :
                                          :
                                          :
                     Defendants. :
------------------------------------------------------------- x

     AJ W. Kim ("Plaintiff"), on behalf of himself, FLSA Collective Plaintiffs, and the Class, by and through his attorneys, AHNE & JI, LLP, upon his knowledge and belief, and as against Jamo 31 Inc. d/b/a/ Osamil, Jamo 31 Plus Inc. d/b/a Osamil Upstairs, Mokwoo Kim, Won Chul Seo a/k/a Lion Seo, and Irene Lee a/k/a Sookyung Lee (collectively, "Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

     1.     Plaintiff was a bartender at Osamil Upstairs, a high-end cocktail bar operating as a single integrated enterprise with Osamil, a modern Korean gastropub and restaurant operating at the first and second floors of the same building in Manhattan's Koreatown.  Throughout his employment at Osamil Upstairs, Defendants paid bartenders, servers, and bussers (collectively, "Waitstaff"), including Plaintiff, the "tipped" minimum wage rate without satisfying the strict tip credit requirements of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

1

2.      Specifically, Defendants failed to provide Waitstaff with proper notice of the tip credit while also unlawfully including managers in the tip pool.  As a result, Defendants failed to pay Waitstaff the minimum wage and at least one and one-half times the statutory minimum wage rate for all hours worked over forty hours per workweek.

3.      Defendants also failed to pay Waitstaff spread-of-hours pay, in violation of NYLL, and failed to provide them with wage notices and accurate weekly wage statements in violation of NYLL's Wage Theft Prevention Act ("WTPA").

4.      Defendants also unlawfully required Plaintiff and Waitstaff to launder and maintain their required uniforms, failing to provide these employees with pay in addition to the minimum wage for these costs, in violation of NYLL and its supporting regulations, 12 N.Y.C.R.R. § 146-1.7.

5.      Lastly, Defendants retaliated against Plaintiff in violation of FLSA and NYLL by terminating Plaintiff because he complained of, and requested information regarding, Defendants' unlawful tip sharing practices.

6.      Plaintiff brings this action on behalf of himself and all similarly situated Waitstaff, pursuant to FLSA, NYLL, and WTPA, seeking injunctive and declaratory relief against Defendants' unlawful actions and to recover unpaid minimum and overtime wages, spread-of-hours premiums, misappropriated gratuities, uniform maintenance pay, past lost wages, future lost wages, liquidated damages, compensatory damages, punitive damages, statutory damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and for such other, further, and different relief as the Court deems just and proper.

## JURISDICTION

7.      This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337, and 1343.

8.      This Court has supplemental jurisdiction over Plaintiff's claims under NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

9.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred at Osamil and Osamil Upstairs, which are both located in the Southern District of New York.

## THE PARTIES

### Plaintiff AJ W. Kim

10.     Plaintiff is an individual residing in Ridgefield, New Jersey.

11.     Plaintiff worked as a bartender at Osamil Upstairs from approximately June 10, 2023 to approximately March 6, 2024.

### Defendant Jamo 31 Inc. d/b/a Osamil

12.     Defendant Jamo 31 Inc. is a New York Corporation that owns, operates, and does business as Osamil, a modern Korean gastropub and restaurant located on the first floor of 5 West 31st Street, New York, NY 10001.

13.     Jamo 31 Inc. was and still is a covered employer within the meaning of FLSA and NYLL in that throughout Plaintiff's employment, it employed Plaintiff and similarly situated Waitstaff by, for example, by hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and their terms of employment.

14.     Jamo 31 Inc. applies the same employment policies, practices, and procedures to all Waitstaff in its operation, including practices concerning their hourly compensation, gratuities disbursement, uniform requirements, and job site procedures.

15.     At all relevant times, Jamo 31 Inc. was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA, NYLL, and regulations thereunder.

16.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and the Class was directly essential to the business operated by Defendants.

17.     Jamo 31 Inc. has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Jamo 31 Plus Inc.

### Defendant Jamo 31 Plus Inc. d/b/a Osamil Upstairs

18.     Defendant Jamo 31 Plus Inc. is a New York Corporation that owns, operates, and does business as Osamil Upstairs, a high-end cocktail bar located on the second floor of 5 West 31st Street, New York, NY 10001.

19.     Jamo 31 Plus Inc. was and still is a covered employer within the meaning of FLSA and NYLL in that throughout Plaintiff's employment, it employed Plaintiff and similarly situated Waitstaff by, for example, by hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and their terms of employment.

20.     Jamo 31 Plus Inc. applies the same employment policies, practices, and procedures to all Waitstaff in its operation, including practices concerning their hourly compensation, gratuities disbursement, uniform requirements, and job site procedures.

21.    At all relevant times, Jamo 31 Plus Inc. was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA, NYLL, and regulations thereunder.

22.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and the Class was directly essential to the business operated by Defendants.

23.    Jamo 31 Plus Inc. has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Jamo 31 Inc.

**Defendant Mokwoo Kim**

24.    Upon information and belief, Defendant Mokwoo Kim ("Defendant Kim") is the owner and principal of Jamo 31 Inc. and Jamo 31 Plus Inc.

25.    Throughout Plaintiff's employment, Defendant Kim held power and authority over operational and personnel decisions at Osamil and Osamil Upstairs, including the power to discipline, hire, and fire employees, set their schedules and wage rates, retain time and/or wage records, and otherwise control their terms and conditions of employment.

26.    For example, Defendant Kim was present at Osamil and Osamil Upstairs at least three (3) to four (4) times a week, if not on a daily basis, to monitor business operations and supervise managerial staff.

27.    Defendant Kim would meet with Osamil and Osamil Upstairs managers on a regular basis to review and supervise the operation of the Osamil Entities, including discussions on menu items, the hiring of staff, pay practices, and the performance of managers.

28.    Defendant Kim specifically instructed Osamil and Osamil Upstairs managers to participate in tip pools to supplement their wages.

29.     Defendant Kim exercised sufficient control over Osamil and Osamil Upstairs' operations and Plaintiff's employment to be considered Plaintiff's employer under FLSA and NYLL.

### Defendant Won Chul Seo a/k/a Lion Seo

30.     Upon information and belief, Defendant Won Chul Seo a/k/a Lion Seo ("Defendant Seo") is the manager of Osamil Upstairs.

31.     Throughout Plaintiff's employment, Defendant Seo held power and authority over personnel decisions at Osamil Upstairs, including the power to supervise three or more employees, discipline, hire, and fire employees, set their schedules and wage rates, retain time and/or wage records, and otherwise control their terms and conditions of employment.

32.     For example, all of Osamil Upstairs's Waitstaff, including Plaintiff, were interviewed and hired by Defendant Seo.

33.     Defendant Seo is the one who fired Plaintiff.

34.     Defendant Seo retained time and wage records of all employees, including Plaintiff's.

35.     Defendant Seo set the percentage rate of shares that managers, captains, bartenders, servers, and bussers would receive from the tip pool.

36.     Despite being a manager who does not regularly and customarily receive tips, Defendant Seo received a significant share, 120%, from the Waitstaff's tip pool.

### Defendant Irene Lee a/k/a Sookyung Lee

37.     Upon information and belief, Defendant Irene Lee a/k/a Sookyung Lee ("Defendant Lee") is the manager of Osamil.

38.     Throughout Plaintiff's employment, Defendant Lee held power and authority over personnel decisions at Osamil, including the power to supervise three or more employees, discipline, hire, and fire employees, set their schedules and wage rates, retain time and/or wage records, and otherwise control their terms and conditions of employment.

39.     For example, Osamil's Waitstaff were hired and fired by Defendant Lee.

40.     Despite being a manager who does not regularly and customarily receive tips, Defendant Lee received a significant share from the Waitstaff's tip pool.

**The Osamil Entities Are a Single Integrated Enterprise and Joint Employer**

41.     Osamil and Osamil Upstairs (collectively, "Osamil Entities") have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

42.     Since the formation of Jamo 31 Plus Inc. d/b/a Osamil Upstairs in April 2017, both Osamil entities have shared their primary location, 5 West 31st Street, New York, NY 10001. Osamil operates on the first floor of the building while Osamil Upstairs operates on the second floor.

43.     Upon information and belief, patrons who enter the first floor of the property are greeted by a host, who either directs and seats patrons to the main restaurant, Osamil, on the first floor, or to the cocktail bar, Osamil Upstairs, on the second floor, depending on what services the patrons request.

44.     Upon information and belief, Osamil and Osamil Upstairs share the same and only kitchen located on the first floor of the building where both entities' menu items are prepared and cooked.

45.    Upon information and belief, Osamil and Osamil Upstairs share and commingle the same inventory of, *inter alia*, alcoholic beverages to prepare and serve their drink menus for their patrons.

46.    Upon information and belief, Osamil and Osamil Upstairs share and commingle the same inventory of, *inter alia*, food materials and supplies to prepare and serve their food menus for their patrons.

47.    Upon information and belief, Osamil and Osamil Upstairs interchange and share employees.

48.    Upon information and belief, Osamil and Osamil Upstairs share tools and equipment used for their business operations.

49.    Upon information and belief, Osamil and Osamil Upstairs share the payroll methods.

50.    Throughout Plaintiff's employment period, Osamil Entities have had unified operations in the same location sharing the same inventory, staff, and record keeping systems.

51.    Osamil Entities share the same owner, Defendant Kim.

52.    Osamil Entities authorize and highlight press descriptions of the two entities as "sister restaurants."

53.    For example, Osamil Upstairs highlights and shares on its website online articles stating that Osamil Upstairs is a "cocktail lounge . . . [a]ttached to its main restaurant downstairs" and describing Osamil Upstairs as a "sister restaurant to Korean gastropub Osamil." *See* Osamil Upstairs, http://www.osamilupstairs.com/press (last visited March 15, 2024).

54.     Osamil Entities are a single integrated enterprise in that they cumulatively had an annual gross volume of sales in excess of $500,000 in each of the three years before the filing of this Complaint.

55.     In addition to operating as a single integrated enterprise, Osamil Entities share and codetermine the essential terms and conditions of the employment of Waitstaff, including Plaintiff, and exercise sufficient control over them to be considered Plaintiff's "employer" under FLSA and NYLL.

56.     Under FLSA, an employer "includes any person acting, directly and indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

57.     Under FLSA, multiple employers may qualify as a "joint employer."  The economic reality of Defendants' relationship with Waitstaff mandates that Osamil Entities be treated as joint employers.

58.     Operating as joint employers, Defendants engaged in a scheme to deprive Waitstaff, including Plaintiff, of the benefits and wages required by FLSA, NYLL, and WTPA, as explained below.

## FACTUAL ALLEGATIONS

59.     Defendants failed to pay Waitstaff, including Plaintiff, the statutory minimum wages.

60.     Defendants failed to pay Waitstaff, including Plaintiff, one and one-half (1½) times their regular wage rates—overtime wages—for hours worked over forty (40) per workweek.

61.     Defendant Kim and managers Defendant Seo and Defendant Lee all had the power to discipline, hire, and fire employees, set their schedules and wage rates, retain time and/or wage records, and otherwise control their terms and conditions of employment.

62.     Defendants created an unlawful tip pool by allowing Osamil Entities' managers to receive a share of Waitstaff's tips on a weekly basis.  For example, Defendant Seo, the manager of Osamil Upstairs, received a 120% share of the tip pool while the captain of Osamil Upstairs received a 110% share, and other Waitstaff received a 100% share to 60% share, the exact rate being set at Defendant Seo's sole discretion.  Defendant Lee, the manager of Osamil, also received a significant share of Osamil's Waitstaff's tip pool and set the tip pool share rate among managerial and Waitstaff.

63.     Plaintiff and other Waitstaff all worked during those weeks and had their individual tip shares reduced as a result of the managers' inclusion.

64.     Despite these practices, Defendants paid Waitstaff, including Plaintiff, below the applicable minimum hourly rate under the pretext of applying a tip credit.

65.     Defendants failed to furnish Waitstaff, including Plaintiff, with an accurate wage notice upon hiring or when their rates of pay changed reflecting their minimum and overtime wages or the tip credit Defendants were claiming.

66.     For example, a wage notice provided to Plaintiff when he was hired by Defendants on or about June 13, 2023 shows that Defendants deducted a tip credit in the amount of $5 per hour although Defendants were not entitled to deduct a tip credit given their unlawful tip sharing practices.

67.     A wage notice provided to Plaintiff on or about January 4, 2024 shows that Defendants deducted a tip credit in the amount of $5.35 per hour although Defendants were not entitled to deduct a tip credit given their unlawful tip sharing practices.

68.     Defendants failed to furnish Waitstaff, including Plaintiff, with wage statements with each payment of their wages throughout their respective employment periods accurately reflecting their minimum and overtime wage rates and total hours worked.

69.     Defendants' failure to comply with the WTPA's wage notice and wage statement requirements went beyond mere technical errors or omissions.

70.     The damages Waitstaff, including Plaintiff, suffered because of the underpayment of their wages are directly traceable to Defendants' overt and intentional failure to comply with WTPA's wage notice and wage statement requirements.

71.     Defendants deprived Waitstaff, including Plaintiff, of accurate wage notices and wage statements in their entirety to conceal the illegality of tip sharing with Osamil Entities' managers as part of Defendants' practice of unlawfully applying tip credits and avoid paying Waitstaff their minimum and overtime wages due.

72.     Defendants' failure to comply with WTPA, along with their intentional manipulation of tip credits and unlawful tip sharing practices, was part of a scheme that intended to, and actually did, deprive Waitstaff, including Plaintiff, of the ability to know if they were being paid correctly and, if not, exactly how much compensation they were entitled to, and led to the underpayment of wages that Plaintiff alleges in this Complaint.

73.     In fact, because Plaintiff complained about Defendants' tip pooling practices, and requested information regarding the extent of managers' unlawfully receiving shares from Waitstaff's tip pool, Plaintiff was terminated.

74.     Multiple times throughout his employment, Plaintiff confronted Defendant Seo and requested information on the extent of which managerial staff were receiving from the Waitstaff's tip pool.

75.    Each time, Defendant Seo declined to answer and stated that Plaintiff does not need to know what percentage managerial staff retain from the tip pool.

76.    At one point, Defendant Seo essentially threatened that he would decrease Plaintiff's tip pool percentage if Plaintiff continued to exhibit "bad behavior."

77.    On or about March 3, 2024, Plaintiff again complained of Osamil Entities' managers unlawfully retaining shares from Waitstaff's tip pool to Defendants, expressing his concern that such practices violate his labor rights.

78.    On or about March 6, 2024, during a phone call, Plaintiff again expressed to Defendant Seo his concerns about managers unlawfully keeping shares from the tip pool by stating that Plaintiff is aware that such practices violate his labor rights and requested that Defendant Seo provide Plaintiff's wage statements that include the tip pooling and sharing information, as they were never provided to him throughout his employment period.

79.    Defendant Seo responded that Plaintiff's complaints about unlawful tip sharing make Defendant Seo "uncomfortable" and stated that Defendant Kim instructed managers, including himself, to keep shares from the tip pool to supplement managers' wages.  Defendant Seo further explained that the percentage share each managerial staff and other Waitstaff keep from the tip pool ranges from 120% to 60%, which is determined at Defendant Seo's sole discretion.

80.    Defendant Seo acknowledged that he was in possession of Plaintiff's and other Waitstaff's wage statements that include tip pooling and sharing information and that he would send Plaintiff's wage statements to him.

81.    In response to Plaintiff's pointing out that managers' tip sharing is unlawful and that it would violate Plaintiff's rights, Defendant Seo became defensive and asked if Plaintiff was threatening him.

82.    During the phone call, Defendant Seo fired Plaintiff because of his complaints about Defendants' unlawful tip sharing practices.

83.    Towards the end of the phone call, Defendant Seo reaffirmed that Plaintiff was terminated.

84.    Upon information and belief, around or after Plaintiff's departure, Defendants started forcing Waitstaff and other employees to sign a purported non-disclosure agreement to prevent employees from exposing information about Defendants' unlawful tip sharing practices and other problematic conduct.

85.    Upon information and belief, some employees, who have been forced or threatened to sign said non-disclosure agreement, believe that they are barred from bringing any claim against Defendants for violating their labor and employment rights and fear retaliation for speaking up.

86.    Defendants also required Plaintiff and other Osamil Upstairs Waitstaff to wear a uniform.

87.    Defendants required Plaintiff and other Osamil Upstairs Waitstaff to wear a dress shirt, dress pants, vest, and tie but did not provide Plaintiff and other Waitstaff with the uniform, nor did they provide any funds to purchase the required uniform.

88.    Rather, Waitstaff were required to either purchase new uniforms or use their own personal belongings.

89.    Defendants did not provide any maintenance fees despite the dress shirt, dress pants, vest, and tie not being made of "wash and wear" materials such that they could not be washed and

13

dried with other personal garments.  The uniform, if anything, required dry cleaning, commercial laundering, or other special treatment to be properly maintained.

90.    Defendants also required Osamil Waitstaff to wear a uniform, to wit: a white shirt and an apron.

91.    Defendants did not provide Osamil Waitstaff with the full required uniform, nor did they provide any maintenance fees.

92.    Defendants did not take uniform expenses and overhead costs into account in determining whether Plaintiff and all other Waitstaff were earning the minimum wage per hour worked.

93.    Uniform expenses and overhead cost deductions were primarily for the benefit and convenience of Defendants and operated as *de facto* deductions from Plaintiff's and all other Waitstaff's wages, causing them to earn less than the minimum wage.

### Plaintiff's Wages Paid and Hours Worked

94.    Throughout his employment period, Plaintiff worked at Osamil Upstairs under Defendants' direction and control.

95.    From approximately June 10, 2023 to on or about July 22, 2023, Plaintiff typically worked approximately thirty-two (32) to thirty-six (36) hours per workweek.

96.    During this period, Plaintiff typically worked three to four days per workweek, Tuesday or Wednesday from approximately 2:30 p.m. to 12:30 a.m., with a twenty (20) minute break in between, and Friday to Sunday from approximately 6:45 p.m. to 2:30 a.m., without a break.

97.    From approximately July 25, 2023 to approximately December 10, 2023, Plaintiff typically worked approximately forty-five (45) to fifty (50) hours per workweek.

98.     During this period, Plaintiff typically worked five days per workweek, usually on Mondays and Wednesdays from approximately 2:30 p.m. to 12:30 a.m., with about a twenty (20) minute break in between, on Thursdays and Fridays from approximately 6:45 p.m. to 2:30 a.m., with a thirty (30) minute break in between, and on Sundays from approximately from approximately 2:45 p.m. to 12:30 a.m., with a thirty (30) minute break in between.

99.     From approximately December 11, 2023 to on or about March 6, 2024, Plaintiff typically worked approximately thirty-eight (38) to forty-two (42) hours per workweek.

100.    During this period, Plaintiff typically worked four to five days per workweek, usually on Mondays from approximately 2:45 p.m. to 12:30 a.m. with a thirty (30) minute break in between, on Thursdays to Saturdays from approximately 6:00 p.m. to 3:00 a.m., with a thirty (30) minute break in between, and on Sundays from approximately 2:45 p.m. to 12:30 a.m. with a thirty (30) minute break in between.

101.    During Plaintiff's employment period in 2023, to wit: from approximately June 10, 2023 to on or around December 31, 2023, Defendants paid Plaintiff at his regular hourly rate of $10.00 for all hours worked, including those over forty (40) in a workweek.

102.    During Plaintiff's employment period in 2024, to wit: from approximately January 4, 2024 to on or about March 6, 2024, Defendants paid Plaintiff at his regular hourly rate of $10.65 for all hours worked, including those over forty (40) in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

103.    Plaintiff brings the claims in this Complaint arising under FLSA on behalf of himself and similarly situated persons who are current and/or former Waitstaff of Defendants since the date three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

104.     The FLSA Collective consists of at least fifty (50) Waitstaff who have been victims of Defendants' common policies and practices that violated their rights under FLSA by willfully denying them the minimum wages, overtime wages, unlawfully misappropriating portions of their tips., and unlawfully deducting tip credits.

105.     The FLSA Collective consists of persons, who, during their employment with Defendants, worked as bartenders, servers, and bussers (*i.e.*, the Waitstaff), and fall into the category of non-exempt, non-managerial tipped employees who customarily and regularly earned more than $30 per month in tips.

106.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in a pattern, practice, and/or policy of violating FLSA.  This pattern, practice, and/or policy includes failing to pay the FLSA Collective members at the applicable minimum wage, overtime wage rate for hours worked over forty (40) per workweek, unlawfully keeping portions of their tips, and unlawfully deducting tip credits.

107.     Defendants were not entitled to take a tip credit against Plaintiff and the FLSA Collective's wages.  With respect to FLSA's requirements:

> FLSA . . . permit[s] an employer to pay a tipped [employee] a cash wage that is lower than the statutory minimum wage, provided that[, *inter alia*,] the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage. . . . This allowance is known as a "tip credit." . . . [However,] FLSA provides that an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not customarily and regularly receive tips.  Thus, an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers.  When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than "*de minimis*" interaction with customers as a part of his employment.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 465–67 (S.D.N.Y. 2015) (internal citations and quotation marks omitted).

16

108.    Defendants unlawfully allowed managers to keep portions of the tips of Plaintiff and the FLSA Collective in violation of 29 U.S.C. § 203(m)(2)(B).

109.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

110.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

111.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the lawsuit.

112.    Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records.

113.    Those similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

### RULE 23 CLASS ACTION ALLEGATIONS – NEW YORK

114.    Plaintiff brings the claims in this Complaint arising out of NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and of a class consisting of Waitstaff, who have worked at Osamil Entities on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

115.    The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of Defendants.  The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

116.    The proposed Class is so numerous in that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than fifty (50) members of the Class.

117.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All the Class Members were subjected to the same corporate practices of Defendants, as alleged herein, including: (a) failing to pay the minimum wages due to unlawful tip sharing with managers; (b) failing to pay the overtime wages due to unlawful tip sharing with managers; (c) failing to pay spread of hours; (d) unlawfully sharing tips with managers; (e) failing to provide accurate wage statements in compliance with NYLL; and (f) failing to provide accurate wage and hour notices upon hiring and as required thereafter, pursuant to NYLL.

118.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member.  Plaintiff and the Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

119.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour lawsuits.

120.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because loses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

121.     Defendants and other employers throughout the state violate NYLL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members, who

are not named in the Complaint, a degree of anonymity, which allows for the vindication of their

rights while eliminating or reducing these risks.

122.    Common questions of law and fact exist as to the Class that predominate over

questions affecting them individually, including the following:

      a.    Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

      b.    Whether Defendants paid Plaintiff and the Class at the appropriate minimum wage rates for all hours worked due to unlawful tip sharing with managers;

      c.    Whether Defendant paid Plaintiff and the Class at the appropriate overtime wage rates for all hours worked in excess of forty (40) hours due to unlawful tip sharing with managers;

      d.    Whether Defendants paid the "spread-of-hours" premiums owed to Plaintiff and the Class working more than ten (10) hours per day, as required by NYLL;

      e.    Whether Defendants violated NYLL Article 6, § 190, et seq., and Article 19, § 650, et seq., and the supporting New York State Department of Labor ("NYDOL") Regulations, 12 N.Y.C.R.R. Part 146, as alleged herein;

      f.    Whether Defendants failed to provide Plaintiff and the Class Members at the time of hiring or whenever there was a change in their rates of pay with a timely notice stating their rates of pay and the basis thereof, whether paid by the hour or otherwise, and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances, in violation of NYLL § 195(1);

      g.    Whether Defendants failed to provide accurate wage statements at the end of every pay period to Plaintiff and the Class in violation of NYLL § 195(3);

      h.    Whether Defendants improperly misappropriated portions of the gratuities due to Plaintiff and the Class in violation of NYLL § 196–d;

      i.    Whether Defendants failed to provide Plaintiff and the Class with uniform maintenance pay, in violation of 12 N.Y.C.R.R. § 146-1.7, and failed to take uniform expenses and overhead costs into account in determining whether Plaintiff and the Class were earning the minimum wage per hour worked; and

      j.    The nature and extent of class-wide injury and the measure of damages for those injuries.

123.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Fed. R. Civ. P.

## FIRST CAUSE OF ACTION
### (FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE)

124.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

125.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and they employ or employed Plaintiff and the FLSA Collective.

126.    Plaintiff and the FLSA Collective are employees within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

127.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

128.    Defendants were required to pay Plaintiff and the FLSA Collective the applicable federal minimum wage rate.

129.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under FLSA because, *inter alia*:

  a.    Defendants were required to, but failed to, inform Plaintiff and the FLSA Collective of the provisions of 29 U.S.C. § 203(m); and

  b.    Defendants made unlawful deductions from non-exempt employees' pay in violation of FLSA, 29 U.S.C. § 203(m) and supporting regulations.

130.    By failing to meet the tip credit requirements, Defendants failed to pay Plaintiff and the FLSA Collective the minimum wages to which they were entitled under FLSA.

131.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

132.    As a result of Defendants' intentional and willful violations of FLSA, Plaintiff and the FLSA Collective suffered damages by being denied minimum wages in accordance with FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(NEW YORK LABOR LAW – UNPAID MINIMUM WAGE)**

133.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

134.    Defendants are employers within the meaning of NYLL §§ 190, 651(6), 652, and supporting NYDOL Regulations, and they employ or employed Plaintiff and the Class Members.

135.    NYLL and supporting NYDOL Regulations require employers to pay employees at least the minimum wage for each hour worked up to forty (40) per workweek.

136.    The minimum wage provisions of NYLL and supporting NYDOL Regulations apply to Defendants.

137.    By failing to meet the tip credit requirements and unlawfully sharing Waitstaff's tip pool with managers, Defendants failed to pay Plaintiff and the Class Members the minimum wages to which they were entitled under NYLL.

138.    Defendants also failed to take uniform expenses and overhead costs into account in determining whether Plaintiff and the Class were earning the minimum wage per hour worked.

139.    Defendants have willfully violated NYLL by knowingly and intentionally failing to pay Plaintiff and the Class Members minimum hourly wages.

140.    As a result of Defendants' intentional and willful violations of NYLL, Plaintiff and the Class Members have suffered damages and are entitled to recover their unpaid minimum wages,

liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**THIRD CAUSE OF ACTION**
**(FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)**

141.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

142.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and they employ or employed Plaintiff and the FLSA Collective.

143.    Plaintiff and the FLSA Collective are employees within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

144.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

145.    Defendants were required to pay Plaintiff and the FLSA Collective one and one half (1½) times their regular wage rates for hours worked over forty (40) per workweek pursuant to the overtime wage provisions set forth in FLSA, 29 U.S.C. § 207 *et seq.*

146.    Defendants were not eligible to avail themselves of the federal tipped overtime wage rate under FLSA because, *inter alia*:

      a.    Defendants were required to, but failed to, inform Plaintiff and the FLSA Collective of the provisions of 29 U.S.C. § 203(m); and

      b.    Defendants made unlawful deductions from non-exempt employees' pay in violation of FLSA, 29 U.S.C. § 203(m) and supporting regulations.

147.    By failing to meet the tip credit requirements, Defendants failed to pay Plaintiff and the FLSA Collective the applicable overtime wages to which they were entitled under FLSA.

148.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

149.    Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under FLSA.

150.    Defendants have intentionally and willfully violated FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective the applicable overtime wages.

151.    Due to Defendants' violations of FLSA, Plaintiff and the FLSA Collective have suffered damages and are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interests, and reasonable attorneys' fees and costs of the action.

## FOURTH CAUSE OF ACTION
### (NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)

152.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

153.    Defendants are employers within the meaning of NYLL §§ 190, 651(6), 652, and supporting NYDOL Regulations, and they employ or employed Plaintiff and the Class Members.

154.    NYLL and its supporting NYDOL Regulations, such as 12 N.Y.C.R.R. § 146–1.4, required Defendants to pay Plaintiff and the Class Members one and one-half (1½) times their regular wage rates for hours worked in excess of forty (40) per workweek.

155.    Defendants were not eligible to avail themselves of the tipped overtime wage rate under NYLL due to intentional, willful, and unlawful tip deductions and sharing by the managers.

156.    By failing to meet the tip credit requirements, Defendants failed to pay Plaintiff and the Class Members the applicable overtime wages to which they were entitled under NYLL.

157.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with NYLL with respect to the compensation of Plaintiff and the Class Members.

158.    Defendants failed to pay Plaintiff and the Class Members the overtime wages to which they were entitled under NYLL.

159.    Defendants violated NYLL by knowingly and intentionally failing to pay Plaintiff and the Class Members overtime wages for all hours worked over forty (40) per workweek and at the applicable overtime wage rate.

160.    Due to Defendants' intentional and willful violations of NYLL, Plaintiff and the Class Members have suffered damages and are entitled to recover unpaid overtime wages, liquidated damages, pre- and post- judgment interest, and reasonable attorneys' fees and costs of the action.

<u>**FIFTH CAUSE OF ACTION**</u>
<u>**(FAIR LABOR STANDARDS ACT – MISAPPROPRIATION OF TIPS)**</u>

161.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

162.    29 U.S.C. § 203(m)(2)(B) prohibits employers from retaining tips received by employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips.

163.    Defendants intentionally and willfully violated FLSA by taking a portion of Plaintiff's and the FLSA Collective's tips and giving them to managers.

164.    As a result, Plaintiff and the FLSA Collective have suffered damages and are entitled to recover their misappropriated tips, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## SIXTH CAUSE OF ACTION
## (NEW YORK LABOR LAW – MISAPPROPRIATION OF TIPS)

165.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

166.    NYLL § 196-d and NYDOL regulations, 12 N.Y.C.R.R. §§ 146–2.14, –2.15, prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee.

167.    Defendants willfully violated these provisions by requiring Plaintiff and the Class Members to share portions of their gratuities with managers.

168.    As a result, Plaintiff and the Class Members suffered damages and are entitled to recover their misappropriated tips, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## SEVENTH CAUSE OF ACTION
## (NEW YORK LABOR LAW – SPREAD-OF-HOURS PAY)

169.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

170.    Defendants willfully failed to pay Plaintiff and the Class Members additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts that were longer than ten (10) hours.

171.    By Defendants' failure to pay Plaintiff and the Class Members spread-of-hours pay, Defendants willfully violated NYLL Article 19, § 650 *et seq*. and its supporting NYDOL Regulations, including, but not limited to, 12 N.Y.C.R.R. §146–1.6.

172.    Due to the Defendants' willful violations of NYLL, Plaintiff and the Class Members suffered damages and are entitled to recover their unpaid spread-of-hours pay, pre- and post-judgment interest, liquidated damages, and reasonable attorneys' fees and costs of the action.

**EIGHTH CAUSE OF ACTION**
**(NEW YORK LABOR LAW AND WAGE THEFT PREVENTION ACT**
**– FAILURE TO PROVIDE WAGE NOTICES)**

173.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

174.    NYLL and WTPA, as well as NYDOL's interpretive regulations, such as, but not limited to, 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

175.    In violation of NYLL § 195(1), Defendants failed to furnish Plaintiff and the Class Members at the time of hiring and whenever there was a change to rates of pay with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

176.    Upon information and belief, Defendants chose not to provide this information to Plaintiffs and the Class Members to avoid informing them of their rights under NYLL and therefore avoid paying them the proper minimum and overtime wage rates due to them.

177.    Due to Defendants' violation of NYLL § 195(1), Plaintiff and the Class Members suffered damages and are entitled to recover from Defendants statutory damages of $50 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-b).

**NINTH CAUSE OF ACTION**
**(NEW YORK LABOR LAW AND WAGE THEFT PREVENTION ACT**
**– FAILURE TO PROVIDE WAGE STATEMENTS)**

178.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

179.    NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

180.    Throughout Plaintiff's and the Class Members' employment with Defendants, Defendants paid Plaintiff and the Class Members without providing a wage statement at the end of every pay period accurately listing allowances, such as tip credits, if any, claimed as part of the minimum wage and all of their hours worked per workweek, especially those over forty (40), in violation of NYLL § 195(3).

181.    Upon information and belief, Defendants chose not to provide this information to Plaintiff and the Class Members to avoid informing them of their rights under NYLL, including their correct minimum and overtime wage rates and hours worked, and so avoid paying them at the proper rates due to them.

182.    Due to Defendants' violation of NYLL § 195(3), Plaintiff and the Class Members suffered damages and are entitled to recover from Defendants statutory damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees and costs and disbursements of the action, pursuant to NYLL § 198(1-d).

**TENTH CAUSE OF ACTION**
**(NEW YORK LABOR LAW – UNIFORMS)**

183.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

184.    Defendants required Plaintiff and the Class Members to wear uniforms.

185.    Defendants unlawfully required Plaintiff and the Class Members to launder and maintain their uniforms and failed to provide Plaintiff and the Class Members with pay in addition to the minimum wage for these costs in violation of NYLL and its supporting NYDOL regulations, 12 N.Y.C.R.R. § 137-1.8.

186.    Plaintiff and the Class Members incurred costs and expenses laundering and maintaining their uniforms for the benefit and convenience of Defendants.

187.    It was Defendants' policy, pattern, and/or practice not to pay for the laundering and maintenance of Plaintiff's and the Class Members' uniforms and not to reimburse them for these costs.

188.    Defendants' failure to reimburse Plaintiff and the Class Members for the costs and expenses of laundering and maintaining these uniforms reduced Plaintiff's and the Class Members' wages to a level below the required minimum wage and overtime pay.

189.    Due to Defendants' intentional and willful violations of NYLL, Plaintiff and the Class Members suffered damages and are entitled to recover an amount prescribed by statute, pre- and post-judgment interest, liquidated damages, and reasonable attorneys' fees and costs of the action.

## ELEVENTH CAUSE OF ACTION
## (FAIR LABOR STANDARDS ACT – RETALIATION)

190.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

191.    Plaintiff engaged in protected activity under FLSA by complaining about Defendants' unlawful tip sharing practices and failure to provide wage notices and wage statements, requesting information about Defendants' tip pooling practices, and highlighting that such practices violated Plaintiff's labor rights.

192.    Defendants retaliated against Plaintiff by terminating him shortly after and because of Plaintiff's complaint and requesting such information.

193.    As a result of Defendants' violation of 29 U.S.C. § 215(a)(3), Plaintiff suffered damages and is entitled to recover past lost wages, future lost wages, liquidated damages, compensatory damages, punitive damages, pre- and post-judgment interests, and reasonable attorneys' fees and costs of the action.

**TWELFTH CAUSE OF ACTION**
**(NEW YORK LABOR LAW – RETALIATION)**

194.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

195.    Plaintiff engaged in protected activity under NYLL by complaining about Defendants' unlawful tip sharing practices and failure to provide wage notices and wage statements, requesting information about Defendants' tip pooling practices, and highlighting that such practices violated Plaintiff's labor rights.

196.    Defendants retaliated against Plaintiff by terminating him shortly after and because of Plaintiff's complaint and requesting such information.

197.    As a result of Defendants' violation of NYLL § 215(1)(a), Plaintiff suffered damages and is entitled to recover lost compensation, liquidated damages in the maximum statutory amount of $20,000, reasonable attorneys' fees and costs of the action, and entitled to an order rehiring or reinstating Plaintiff to his former position with restoration of seniority or an award of front pay in lieu of reinstatement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an order and judgment:

a.      certifying the case as a collective action for the violations of FLSA alleged in the Complaint, designating the named Plaintiff as the representative of the FLSA Collective, and designating Plaintiff's attorneys as counsel for the FLSA Collective;

b.      certifying this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint, certifying Plaintiff as class representative, and designating Plaintiff's attorneys as class counsel;

c.      authorizing the issuance of notice at the earliest possible time to all potential FLSA Collective members who worked for Defendants within the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

d.      declaring that Defendants have violated the minimum and overtime wage provisions of FLSA;

e.      declaring that Defendants have violated the minimum and overtime wage provisions of NYLL;

f.      declaring that Defendants unlawfully misappropriated tips in violation of FLSA and NYLL;

g.      declaring that Defendants unlawfully failed to pay Plaintiff and the Class Members spread-of-hours pay;

h.      declaring that Defendants violated the notice and wage statement provisions of NYLL and WTPA;

i.      declaring that Defendants violated the uniform maintenance pay provisions of NYLL and NYDOL's implementing regulations;

31

j.    declaring that Defendants unlawfully retaliated against Plaintiff in violation of FLSA and NYLL;

k.    enjoining future violations of FLSA and NYLL by Defendants;

l.    awarding Plaintiff, the FLSA Collective, and the Class damages for unpaid minimum and overtime wages under FLSA and NYLL;

m.    awarding Plaintiff and the Class damages for spread-of-hours pay and statutory damages under NYLL and WTPA;

n.    awarding Plaintiff, the FLSA Collective, and the Class damages for unlawfully misappropriated gratuities under FLSA and NYLL;

o.    awarding Plaintiff and the Class damages for Defendants' failure to reimburse Plaintiff and the Class for the cost of laundering and maintaining required uniforms;

p.    awarding Plaintiff, the FLSA Collective, and the Class liquidated damages pursuant to FLSA and NYLL;

q.    awarding Plaintiff, the FLSA Collective, and the Class pre- and post-judgment interest pursuant to NYLL;

r.    awarding Plaintiff, the FSLA Collective, and the Class reasonable attorneys' fees and costs pursuant to FLSA and NYLL;

s.    awarding Plaintiff past lost wages, future lost wages, compensatory damages, punitive damages for Defendants' violation of FLSA's anti-retaliation provisions;

t.    awarding Plaintiff lost compensation, liquidated damages, or ordering rehiring or reinstatement of Plaintiff to his former position with restoration of seniority or awarding front pay in lieu of reinstatement for Defendants' violation of NYLL's anti-retaliation provisions; and

u.    awarding such other, further, and different relief as the Court deems just

and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury in this action.

Dated: New York, New York
       March 19, 2024

**AHNE & JI, LLP**

By: /s/ Younghoon Ji_____
    By: Younghoon Ji, Esq.
    *Attorneys for Plaintiff, FLSA*
    *Collective, and the Class*
    45 East 34th Street, 5th Floor
    New York, New York 10016
    Tel. (212) 594-1035
    Email: yji@ahnejillp.com